1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| FREDERICK LEE JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL BARNES, et al.,<br><br>Defendants. | **Case No. CV 04-08017 RSWL (RAO)**<br><br>**ORDER ACCEPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE** |
|---|---|

Pursuant to 28 U.S.C. § 636, the Court has reviewed the Third Amended Complaint, all of the records and files herein, and the Magistrate Judge's Report and Recommendation, dated February 4, 2016.  Further, the Court has engaged in a *de novo* review of those portions of the Report to which the Parties have objected. The Court accepts and adopts the findings, conclusions, and recommendations of the Magistrate Judge.

On September 27, 2004, Plaintiff Frederick Lee Jackson filed the instant action under 42 U.S.C. § 1983.  Plaintiff filed his Third Amended Complaint on May 12, 2015, asserting claims against Defendants Michael Barnes, Patricia Murphy, and the Ventura County Sheriff's Department.  Both Plaintiff and Defendants moved for summary judgment on all claims in the Third Amended Complaint.  On February 4, 2016, the Magistrate Judge issued a Report and

Recommendation, recommending that the Court grant, in part, and deny, in part, the Parties' cross-summary judgment motions. Both Plaintiff and Defendants have filed Objections to the Report.

Defendants object to the Report's finding that Plaintiff was taken into custody for purposes of *Miranda*. (Defs.' Objs. at 2.) Defendants argue that the circumstances in this case closely resemble the circumstances found in *Howes v. Fields*, --- U.S. ----, 132 S. Ct. 1181, 182 L. Ed. 2d 17 (2012). (*See id.* at 2-5.) In *Howes*, two sheriff's deputies questioned a Michigan jail inmate about allegations of sexual conduct with a minor occurring before his incarceration. 132 S. Ct. at 1185. A deputy led the inmate down one floor of the facility and through a locked door to a conference room in another section of the facility. *Id.* at 1185-86. The deputies told the inmate that he was free to leave and return to his jail cell at the beginning of and during the interview. *Id.* at 1186. The deputies were armed, but the inmate was not restrained. *Id.* The conference-room door was open at times and closed at times during the interview. *Id.* The inmate was questioned between five and seven hours and was at no time given *Miranda* warnings. *Id.*

About halfway through the interview, the inmate "became agitated and began to yell" after being confronted with allegations of abuse. *Howes*, 132 S. Ct. at 1186. One of the deputies, using an expletive, told the inmate to sit and said that "'if [he] didn't want to cooperate, [he] could leave." *Id.* The inmate told the deputies "several times during the interview that he no longer wanted to talk" to them, but he did not ask to return to his cell. *Id.* The inmate ultimately confessed. After the interview, the inmate waited 20 minutes for an officer to be summoned to take him back to his jail cell. *Id.*

The United States Supreme Court found that the inmate was not in custody for purposes of *Miranda*. *Howes*, 132 S. Ct. at 1192-93. The Court indicated that, in assessing the question of custody, a court must consider all of the circumstances surrounding the interrogation to determine whether a reasonable person would not

have felt free to end the interrogation and leave. *Id.* at 1189. The Court stated that "[w]hen a prisoner is questioned, the determination of custody should focus on all of the features of the interrogation … includ[ing] the language that is used in summoning the prisoner to the interview and the manner in which the interrogation is conducted." *Id.* at 1192.

Defendants attempt to draw favorable comparisons with *Howes*, arguing that Plaintiff was subjected to even fewer restraints and therefore could not have been in custody for purposes of *Miranda*. (*See* Defs.' Objs. at 3-5.) Defendants contend that the undisputed facts show Plaintiff was a sophisticated criminal, Defendant Barnes interviewed Plaintiff for less than five minutes, Barnes was unarmed during the interview, Plaintiff voluntarily ended the interview by standing up and telling the guards outside that he wanted to leave, and the conditions of the interview room were no harsher than Plaintiff's usual environment. (*See id.*) In reaching their conclusion, however, Defendants err by taking a narrow view of the circumstances surrounding Plaintiff's interview.

The Court agrees with the Report that a comprehensive analysis that takes into consideration all of the circumstances surrounding Plaintiff's interview leads to the conclusion that Plaintiff was in *Miranda* custody. *See Howes*, 132 S. Ct. at 1192 ("the determination of custody should focus on *all* of the features of the interrogation …") (emphasis added). For instance, Plaintiff was not told he was free to terminate the interview at any time. Plaintiff was accused of being untruthful in his past interviews. Barnes insisted Plaintiff tell the truth and confronted Plaintiff with evidence of guilt. Further, Barnes persisted in asking Plaintiff for his story – eight times, specifically – within an approximately four-minute timespan, despite Plaintiff refusing each time. Not only are these coercive aspects absent in *Howes*, they also outweigh the other circumstances suggesting Plaintiff was not in *Miranda* custody.

///

1  Defendants claim that the Report's emphasis on the fact that Plaintiff was not 2 informed he was free to leave undermines the totality of the circumstances test, 3 citing to *Howes*, 132 S. Ct. at 1194, in support. (Defs.' Objs. at 7.) But the *Howes* 4 Court, in considering the totality of the circumstances, weighed this factor heavily. 5 *See, e.g.*, 132 S. Ct. at 1194 ("Taking into account all of the circumstances of the 6 questioning – *including especially the undisputed fact that respondent was told he* 7 *was free to end the questioning and to return to his cell* – we hold that respondent 8 was not in custody within the meaning of *Miranda*.") (emphasis added); *see also id.* 9 at 1195 (Ginsburg, J., concurring in part, dissenting in part) ("Critical to the Court's 10 judgment is "the undisputed fact that [Fields] was told that he was free to end the 11 questioning and to return to his cell."). The Report's consideration that Barnes did 12 not inform Plaintiff he was free to leave, combined with the other coercive factors 13 found in Plaintiff's interview, does not render the Report's custodial finding 14 improper. *See United States v. Thomas*, Case No. 12-CR-0128-MJD-JJK, 2012 WL 15 6812536, at *6, 7 (D. Minn. Dec. 19, 2012) (comparing *Howes* and finding 16 custodial interrogation where, *inter alia*, defendant was not advised she was free to 17 leave), *R&R adopted*, 2013 WL 101930 (D. Minn. Jan. 8, 2013).

18  Defendants also object to the Report's finding that Barnes is not entitled to 19 qualified immunity, arguing that the specific context of this case had not been 20 considered before 1993 so as to put a reasonable officer on notice that Barnes' 21 conduct was unlawful. (Defs.' Objs. at 6-8.) The argument is untenable because it 22 rests on an unwarrantedly narrow view of the circumstances surrounding Plaintiff's 23 interview, glossing over the coercive aspects of the interview. (*See id.* at 6-7 24 (claiming the context at issue here for determining qualified immunity is "where a 25 prisoner already in custody is questioned for a matter of minutes by a single 26 unarmed officer without any restriction on the inmate's movement beyond that 27 inherent in a prison setting")); *cf. Mullenix v. Luna*, --- U.S. ----, 136 S. Ct. 305, 28 308, 193 L. Ed. 2d 255 (2015) (determining whether the law placed a state actor on

reasonable notice that his conduct would violate the Constitution must be determined "*in light of the specific context of the case*, not as a broad general proposition.") (emphasis added).

Defendants urge this Court to disregard the coercive aspects of the interview in determining qualified immunity because they are "secondary features" not typically considered by other courts and do not establish "beyond debate" that a reasonable officer would know Barnes' conduct was unlawful. (*Id.* at 7-8.) The arguments lack foundation and merit. At the time of Plaintiff's interview, the law was clearly established that, at a minimum, a person is in custody for purposes of *Miranda* when there is a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *See California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 (1983). And in applying the law, courts had found *Miranda* custody in cases decided before 1993 where a suspect was not advised he or she may voluntarily terminate the interview and was free to leave, and was confronted with psychological pressure and/or evidence of guilt. *See, e.g.*, *United States v. Beraun-Panez*, 812 F.2d 578, 580-81 (9th Cir. 1987) (finding custody where, *inter alia*, suspect was not informed he was free to leave, was repeatedly accused of lying, confronted with false or misleading witness statements, and told to tell the truth); *United States v. Wauneka*, 770 F.2d 1434, 1438-39 (9th Cir. 1985) (finding custody where, *inter alia*, suspect was not offered an opportunity to leave the interview room prior to his confession, the questioning turned accusatory, and the suspect was told to tell the truth).

Finally, Defendants claim in their Objections that summary judgment should be entered for Defendant Ventura County Sheriff's Department because Plaintiff failed to present any evidence supporting the department's liability under a *Monell* theory. (Defs.' Objs. at 8.) Because Defendants did not raise the issue of *Monell* liability in their motion for summary judgment, the Court declines to consider the argument as improper. *See Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d

633, 638-39 (9th Cir. 1988) (district court properly ruled that issues raised for the first time in objections to magistrate judge's report had been waived), *overruled on other grounds by United States v. Hardesty*, 977 F.2d 1347, 1348 (9th Cir. 1992).

Plaintiff objects to the Report's conclusion that summary judgment should be entered for Defendant Patricia M. Murphy. (*See generally* Pl.'s Objs.) Plaintiff disagrees with the Report's statement that he needs to prove Murphy's participation in the deprivation of his constitutional rights, arguing that he only needs to show Murphy entered into an agreement or "meeting of the minds" with Barnes to unlawfully elicit a confession from Plaintiff. (*See id.* at 1-2 (citing *Gilbrook v. City of Westminster*, 177 F.3d 839, 856-57 (9th Cir. 1999).) However, a defendant is liable under § 1983 only if his or her conduct "subjects, or causes to be subjected" the alleged deprivation of a constitutional right. *Rizzo v. Goode*, 423 U.S. 362, 370-71, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976); *see also Lacey v. Maricopa County*, 693 F.3d 896, 915-16 (9th Cir. 2012). To prove then a civil conspiracy in violation of § 1983, a plaintiff must have sufficient evidence showing that the defendant participated in the conspiracy. *See Lacey*, 693 F.3d at 916; *Gilbrook*, 177 F.3d at 856-57. The Report correctly reviewed whether Plaintiff adduced sufficient evidence demonstrating Murphy's participation in a conspiracy, within the lens framed by Plaintiff – that Murphy directed Barnes to elicit a unlawful confession from Plaintiff and knew about Barnes' past practice of withholding *Miranda* warnings. (*See* Third Amended Complaint, ¶¶ D(1), (9), (15)); *cf. Robichaud v. Ronan*, 351 F.2d 533, 537 (9th Cir. 1965) (holding that prosecutors who allegedly directed police to coerce confession from suspect, were not immunized from responsibility for the unlawful acts).

Plaintiff further claims in his Objections that the Report improperly weighed the evidence in finding summary judgment for Murphy. (*See* Pl.'s Objs. at 2-5.) The Court's function in evaluating a summary judgment motion "is not to weigh the evidence and determine the truth of the matter but to determine whether there is

a genuine issue for trial." *Tolan v. Cotton*, --- U.S. ----, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 1863. The exception though is that the nonmovant may not create a genuine issue of material fact through speculation or unjustifiable inferences. *See Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."); *In re Coordinated Pretrial Proceedings*, 906 F.2d 432, 441 (9th Cir. 1990) (at summary judgment stage, a court may refuse to adopt unreasonable inferences from circumstantial evidence), *cert. denied*, *Chevron Corp. v. Arizona*, 500 U.S. 959, 111 S. Ct. 2274, 114 L. Ed. 2d 725 (1991).

The Court finds that the Report did not weigh the evidence in considering the cross-motions for summary judgment, but rather appropriately reviewed the materiality of the facts proffered to determine if they "might affect the outcome of the suit under the governing law." *George v. Morris*, 736 F.3d 829, 834 (9th Cir. 2013) (citing *Behrens v. Pelletier*, 516 U.S. 299, 312-13, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). And as the Report thoroughly explains, Plaintiff fails to set forth evidence reasonably supporting the inference that Murphy participated in a conspiracy to unlawfully elicit a confession. For example, Plaintiff argues in his Objections that Murphy's declaration stating she was knowledgeable about the events with the prosecution demonstrates she was fully aware Barnes would unlawfully elicit a confession from Plaintiff. (*See* Pl.'s Objs. at 4-5.) The Court disagrees with the inference Plaintiff draws from this evidence because Plaintiff offers only speculation as to the existence of a causal link between Murphy's knowledge of the events concerning the prosecution and her participation in the alleged conspiracy. In short, Plaintiff's proffered evidence fails to raise a genuine triable issue of fact that Murphy directed Barnes to elicit an unlawful

1 confession from Plaintiff or knew about Barnes' past practice of withholding
2 *Miranda* warnings.
3     IT IS THEREFORE ORDERED that (1) Plaintiff's Motion for Summary
4 Judgment is GRANTED as to Michael Barnes' liability; (2) Plaintiff's Motion for
5 Summary Judgment is DENIED as to Patricia M. Murphy's and Ventura County
6 Sheriff's Department's liability; (3) Defendants' Motion for Summary Judgment is
7 GRANTED as to Patricia M. Murphy's liability; and (4) Defendants' Motion for
8 Summary Judgment is DENIED as to Michael Barnes' and the Ventura County
9 Sheriff's Department's liability.
10
11
12 DATED: 4/13/2016
13                                     s/ RONALD S.W. LEW
                                    RONALD S.W. LEW
14                                     UNITED STATES DISTRICT JUDGE